UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ANNMARIE SUSAN PISAREK,
n/k/a Annmarie Susan Sam,

                       Plaintiff             DECISION AND ORDER

-vs-
                                       1:18-CV-0200 CJS

ANDREW M. SAUL,
Commissioner of Social Security,

                       Defendant.
_____

APPEARANCES

For the Plaintiff:                Samantha J. Ventura
                                          Kenneth R. Hiller
                                          Law Offices of Kenneth Hiller
                                          6000 N. Bailey Avenue, Suite 1A
                                          Amherst, New York 14226

For the Defendant:            Emily M. Fishman
                                          Social Security Administration
                                          Office of General Counsel
                                          26 Federal Plaza, Room 3904
                                          New York, New York 10278

                                          Dennis J. Canning
                                          Joshua R. Sumner
                                          Social Security Administration
                                          Office of General Counsel
                                          601 E. 12th Street, Room 965
                                          Kansas City, Missouri 64106

INTRODUCTION

     This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner of Social Security ("Commissioner" or "Defendant"),

which denied the application of Annmarie Pisarek for Disability Insurance Benefits ("SSDI").  Plaintiff claims to be completely disabled due to a combination of ailments including heart disease, back pain, anxiety and carpal tunnel syndrome.   Now before the Court is Plaintiff's motion (Docket No. [#11]) for judgment on the pleadings and Defendant's cross-motion [#18] for the same relief.   For the reasons discussed below, Plaintiff's application is denied and Defendant's application is granted.

FACTUAL BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action.   The Court will summarize the record only as necessary for purposes of this Decision and Order.

On May 18, 2010, Plaintiff filed an application for SSDI benefits, alleging that she became disabled as of March 6, 2007, due to a combination of impairments including lumbar spine dysfunction, myocardial infarction, mood disorder and anxiety disorder. At a hearing held before an Administrative Law Judge ("ALJ"), Plaintiff testified to having a heart attack, back pain, knee pain, difficulty breathing, problems with her hands which caused her to drop things, panic attacks, anxiety, depression, difficulty concentrating and difficulty breathing.[1]   On April 4, 2012, an Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's claim, and finding that she was not disabled at any time between March 6, 2007, the alleged onset-of-disability date, and April 4, 2012, the date of the decision. (The ALJ also noted that Plaintiff's last-insured date for SSDI benefits was December 31, 2012).   Applying the familiar five-step sequential analysis used to

---

[1] *See, e.g.*, Transcript at 78-79, 84-85, 89, 92.

evaluate disability claims,[2] the ALJ found at the first three steps, respectively, that Plaintiff had not engaged in substantial gainful employment since March 6, 2007;[3] that she had severe impairments consisting of lumbar spine dysfunction, myocardial infarction (status post angioplasty), mood disorder and anxiety disorder; and that those impairments, either singly or in combination, did not meet or equal a listed impairment. With regard to Plaintiff's impairments and their severity, the ALJ observed that while Plaintiff claimed to have a problem with her hands, she had not made any contemporaneous complaints about that to her doctor; that she similarly had not complained to her doctors about panic attacks; that there was no evidence of her complaining about difficulty breathing; that there was no evidence of her complaining about feeling tired due to her medications; and that there was "no evidence" that she had "concentration difficulties."[4] Prior to reaching the fourth step, the ALJ found that Plaintiff had the residual functional capacity ("RFC")

> to perform light work . . . except that [she] cannot sit for more than six hours a day and cannot stand or walk for more than a combined total of four hours a day, with the accommodation of altering between sitting and standing every 45 minutes. She cannot crawl or stoop. She cannot push or pull with the upper extremities. She can occasionally interact with the public. She can occasionally understand, remember and carry out complex and detailed tasks.[5]

Based upon this RFC, the ALJ found at the fourth step of the sequential analysis that Plaintiff could not perform any past relevant work. However, at the fifth step, the ALJ

---

[2] *See, Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (Explaining the five-step sequential analysis).
[3] Plaintiff's last reported earnings were in 2007. Transcript at 240.
[4] Transcript at 143.
[5] Administrative Record ("Transcript") at 142.

found that Plaintiff could perform other jobs, namely, "bench assembler," DOT 706.3684-042, and "electronic accessories assembler," DOT 729.687-010. Plaintiff appealed, but on August 9, 2013, the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the final determination of the Commissioner.

More than a year later, on December 4, 2014, Plaintiff filed another application for SSDI benefits, claiming disability beginning on April 5, 2012, the day after the date of the prior ALJ's decision.[6] However, Plaintiff later amended the application to indicate that she became disabled on August 10, 2013, which was after her last-insured date. Plaintiff indicated that her disabling conditions were "constant ache in back," "unable to lift/bend/stand," "right knee injury," "trouble bending knee," "carpal tunnel in hands," "arthritis in hands," "difficulty picking up objects," "heart attack in 2010," "trouble breathing" and "tired all the time."[7] In this regard, the ailments were essentially the same ones that Plaintiff had identified in her earlier application for benefits. Plaintiff requested that the ALJ reopen her prior application.

On May 24, 2017, a new ALJ issued a decision denying Plaintiff's claim. In that regard, the ALJ first denied Plaintiff's request to reopen the prior application, but construed that same application as a request to amend the disability onset date to an earlier date. Specifically, the ALJ amended the alleged onset date to April 5, 2012, the earliest possible date after the denial of the prior application.

The ALJ further noted that Plaintiff's last-insured date was December 31, 2012,

---

[6] Transcript at 231.
[7] Transcript at 246.

as previously noted, and that the issue before him therefore was whether Plaintiff had established disability at any time during the nine-month window between April 5, 2012 and December 31, 2012.

Applying the familiar five-step sequential analysis, the ALJ found, at the first three steps, respectively, that Plaintiff had not engaged in substantial gainful employment at any time during the relevant period; that Plaintiff had seven severe impairments consisting of lumbar spine dysfunction, myocardial infarction (post angioplasty), mood disorder, anxiety disorder, left ulnar nerve neuropathy, bilateral carpal tunnel syndrome, and degenerative disease of the left thumb; and that none of those impairments singly or in combination met or equaled a listed impairment. With regard to the seven severe impairments, the ALJ noted that the prior ALJ's decision had determined that the first four impairments were severe, and no new evidence challenged that finding, while additional evidence submitted after the prior ruling established that the last three impairments were also severe. As for whether the impairments met or equaled a listed impairment, the ALJ stated: "The prior ALJ determined that the claimant's impairments did not meet or medically equal a listing through April 4, 2012, and the minimal new evidence of record does not support a different finding during the period from April 5, 2012 through December 31, 2012."[8]

Prior to reaching the fourth step of the sequential analysis, the ALJ found that Plaintiff's RFC was unchanged from the prior ALJ's finding. In that regard, the ALJ

---

[8] Transcript at 19. The prior ALJ had considered all of the same impairments as the second ALJ, even though he had found that some of Plaintiff's claimed impairments were not severe.

observed that there were "only three medical reports that constitute[d] new and material evidence relating to the critical time period after the prior [ALJ] decision and before the date last insured," and that such evidence did "not establish a greater degree of limitation than found by the prior [ALJ]."[9] Specifically, the ALJ reviewed and discussed the following pieces of evidence: 1) a retrospective RFC report from Plaintiff's primary care doctor, L. Snyder, M.D. ("Snyder") dated February 28, 2017 (more than four years after Plaintiff's last-insured date) indicating that Plaintiff had been completely unable to perform any type of work, from 2001 onward;[10] 2) a report concerning Plaintiff's "hand and wrist problems" from orthopedic physician's assistant Fred Wagner, RPA ("Wagner"), dated April 17, 2017, and indicating that Plaintiff had some limitations with regard to her right hand, but that she could still use that hand "frequently" for both fine and gross manipulation;[11] and 3) an office note from Dr. Snyder dated August 2, 2012, at which time Plaintiff was complaining of some numbness in her left arm, but otherwise appeared healthy.[12]

The ALJ gave "very little weight" to Snyder's report, finding that it was inconsistent with the record overall and with Snyder's own treatment notes.[13] The ALJ observed, for example, that Plaintiff had actually worked until 2006, even though Snyder had opined that she was completely disabled as early as 2001, and that Plaintiff herself did not claim to have become disabled until 2007.[14] With regard to PA Wagner's

---

[9] Transcript at 20.
[10] Transcript at 990-994.
[11] Transcript at 998-999.
[12] Transcript at 563-564.
[13] Transcript at 20.
[14] Transcript at 20.

retrospective report, the ALJ stated that it appeared to assess Plaintiff with a *higher* level of functioning than the ALJ's RFC finding. For example, the ALJ noted that his RFC finding indicated that Plaintiff could not perform "pushing or pulling with the bilateral upper extremities," while Wagner's report stated that Plaintiff "could frequently to constantly perform fine and gross manipulative tasks with both upper extremities."[15] As for Dr. Snyder's office note from August 2012, the ALJ observed that apart from Plaintiff's complaint of left-arm numbness, she had "no other complaints" and appeared "overweight but healthy."[16] The ALJ further noted that even later office notes by Dr. Snyder, from February 2013 and March 2013, did "not suggest a different level of functioning than found by the prior [ALJ]."[17]

Based upon the aforementioned RFC finding, the ALJ determined, at the Fourth Step of the sequential analysis, that Plaintiff could not perform her past relevant work.[18] However, at the Fifth and final step, the ALJ found that Plaintiff could perform other work, namely, the same jobs identified by the first ALJ.[19] With regard to his analysis at both the Fourth and Fifth Steps, the ALJ relied upon the testimony of the VE from the prior hearing before the first ALJ. In sum, the ALJ ruled that Plaintiff was not disabled at any time between April 5, 2012 and December 31, 2012.

After receiving the ALJ's unfavorable ruling, Plaintiff requested review by the Appeals Council. On December 5, 2017, the Appeals Council issued a notice

---

[15] Transcript at 21.
[16] Transcript at 21.
[17] Transcript at 21.
[18] Transcript at 22.
[19] Transcript at 22-23.

indicating that it had denied Plaintiff's request for review.

On February 5, 2018, Plaintiff commenced this action. On November 5, 2018, Plaintiff filed the subject motion [#11] for judgment on the pleadings. Plaintiff contends that remand is required because the ALJ erred in three ways: 1) the ALJ improperly rejected Dr. Snyder's retrospective opinion, leaving his RFC finding unsupported by substantial evidence; 2) the ALJ failed to explain the weight that he gave to PA Wagner's report; and 3) the ALJ failed to explain his analysis at Step 3 of sequential evaluation.

On March 4, 2019, Defendant filed the subject cross-motion for judgment on the pleadings.

STANDARDS OF LAW

42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive." The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Where, as in this case, the ALJ's determination follows a prior final determination by the Commissioner denying benefits to the same claimant,

[t]he [Social Security Administration ("SSA")] has issued clear guidance regarding

how [it understands] a prior SSA decision may affect a later decision:

> Under SSA policy, if a determination or decision on a disability claim has become final, the Agency may apply administrative res judicata with respect to a subsequent disability claim under the same title of the Act if the same parties, facts and issues are involved in both the prior and subsequent claims. However, if the subsequent claim involves deciding whether the claimant is disabled during a period that was not adjudicated in the final determination or decision on the prior claim, SSA considers the issue of disability with respect to the unadjudicated period to be a new issue that prevents the application of administrative res judicata. Thus, when adjudicating a subsequent disability claim involving an unadjudicated period, SSA considers the facts and issues de novo[20] in determining disability with respect to the unadjudicated period.

*Effect of Prior Findings on Adjudication of a Subsequent Disability Claim Arising Under the Same Title of the Social Security Act -- Titles II and XVI of the Social Security Act.* AR 98-4(6) (S.S.A. June 1, 1998), 1998 WL 283902, at *2 (emphasis added). In other words, the SSA considers the application anew, rather than being beholden in any way to the outcome of an older decision.

*Michael G. v. Saul*, No. 418CV00102TWPDML, 2019 WL 3430561, at *4 (S.D. Ind. July

---

[20] In applying this "*de novo*" standard, courts generally "evaluat[e] the evidence after the most recent decision according to the current law." *Michael G. v. Saul*, No. 418CV00102TWPDML, 2019 WL 3430561, at *4 ("The ALJ accurately explained the governing standard, that he was limited to evaluating the evidence after the most recent decision according to the current law."); *see also, Charles K. v. Berryhill*, No. 118CV02013JPHDML, 2019 WL 667760, at *4 (S.D. Ind. Feb. 15, 2019) ("The Court concludes that the ALJ did not err in giving de novo consideration to the new period of adjudication based on the medical evidence of record beginning with the Plaintiff's application for benefits in the instant claim."). To the extent an ALJ considers evidence from the prior period, it should be only to assess the severity of the claimant's condition during the later subject period. *See, e.g., Hussain v. Comm'r of Soc. Sec.*, No. 13 CIV. 3691 AJN GWG, 2014 WL 4230585, at *14 (S.D.N.Y. Aug. 27, 2014) (Finding that an ALJ had not constructively reopened an earlier application by considering evidence from that period: "[T]here is no indication that the ALJ reviewed the evidence concerning S.R.R.'s medical history for any purpose other than assessing the severity of S.R.R.'s condition during the period for which benefits were claimed in the second application. In sum, because the ALJ stated in his decision that he was deciding the merits of the second application and made no mention at all of the first application, and because it is clear that the ALJ considered the evidence relating to the earlier time period for the purpose of assessing the merits of the second application, Hussain's request to find a constructive reopening of the prior application should be denied."), report and recommendation adopted, No. 13-CV-3691 AJN GWG, 2014 WL 5089583 (S.D.N.Y. Sept. 25, 2014).

29, 2019).

The SSA has further explained that pursuant to its policy set forth above, when adjudicating a subsequent disability claim involving an unadjudicated period, it

> considers the facts and issues *de novo* in determining disability with respect to the unadjudicated period. SSA does not adopt findings from the final determination or decision on the prior disability claim in determining whether the claimant is disabled with respect to the unadjudicated period. Further, under SSA policy, a prior final determination or decision that a claimant is not disabled does not give rise to any presumption of a continuing condition of nondisability. When a subsequent claim involves an unadjudicated period, the determination or decision as to whether a claimant is disabled with respect to that period is made on a neutral basis, without any inference or presumption that a claimant remains "not disabled."

*Bougalis v. Colvin*, No. CIV. 14-1382 ADM/JSM, 2015 WL 3825493, at *34 (D. Minn. June 19, 2015) (quoting SSA's AR 97-4(9)).

However, not all courts follow the SSA's policy on this point. For example, the Ninth Circuit "applies a presumption of continuing non-disability to a subsequent disability claim, which the claimant can rebut by showing changed circumstance affecting the issue of disability." *Cirdan E. v. Berryhill*, No. 6:17-CV-1530-SI, 2018 WL 5786216, at *4 (D. Or. Nov. 5, 2018) (citing *Chavez v. Bowen*, 844 F.2d 691 (9th Cir. 1988)). Such changed circumstances may include "an increase in the severity of a previously existing impairment, a change in age category, and any new issue, such as the existence of an impairment not considered in the previous application." *Sandra C. v. Berryhill*, No. EDCV 17-1379-JPR, 2019 WL 1331278, at *3 (C.D. Cal. Mar. 25, 2019) (citation omitted). Under this Ninth Circuit rule, if the claimant rebuts the presumption of continuing non-disability

> by proving a "changed circumstance," principles of res judicata [still] require that certain findings contained in the final decision by the ALJ on the prior claim be given some res judicata consideration in determining whether the claimant is disabled with respect to the unadjudicated period involved in the subsequent claim . . . [including] findings [concerning] the claimant's residual functional capacity, education, and work experience . . . unless there is new and material evidence relating to the claimant's residual functional capacity, education or work experience.

SSA 97-4(9).

The Fourth Circuit and Sixth Circuit similarly grant some *res judicata* effect to prior determinations involving the same claimant, even when considering a new previously-unadjudicated period. *See, Cuffee v. Berryhill*, 680 F. App'x 156, 159 (4th Cir. 2017) ("When adjudicating a subsequent disability claim arising under the same or a different title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence and give it appropriate weight in light of all relevant facts and circumstances.") (quoting SSA's AR00-1(4), which was issued in response to the Fourth Circuit's ruling in *Lively v. Secretary of Health and Human Services*, 820 F.2d 1391 (4th Cir. 1987)); *see also, McPherson v. Comm'r of Soc. Sec. Admin.*, No. 2:18-CV-11160, 2019 WL 3934450, at *3 (E.D. Mich. July 9, 2019) ("[W]hen considering a renewed application for benefits, [in the Sixth Circuit there is] a presumption that facts found in a prior ruling remain true in a subsequent unadjudicated period unless there is new and material evidence showing changed circumstances occurring after the prior decision.") (citing *Drummond v. Commissioner of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997) and SSA's AR 98-4(6); internal quotation marks omitted.), report and recommendation

adopted sub nom. *McPherson v. Berryhill*, No. 2:18-CV-11160-TGB, 2019 WL 3892587 (E.D. Mich. Aug. 19, 2019).

The Court is not aware of any statement by the Second Circuit Court of Appeals directly addressing this precise issue. That is, the Second Circuit has not, to this Court's knowledge, indicated whether ALJ's in this Circuit must follow the procedure outlined by the SSA, or whether they must follow procedures likes those mandated in *Chavez*, *Drummond* and *Lively*. In the absence of such guidance, this Court has previously indicated that it found persuasive the Sixth Circuit's ruling in *Drummond* and the Fourth Circuit's ruling in *Lively, see, Singletary v. Astrue*, No. 07-CV-6025-CJS, 2008 WL 1323892, at *2-4 (W.D.N.Y. Jan. 22, 2008), and similarly finds persuasive the reasoning of *Chavez v. Bowen. See also, Kendrick v. Sullivan*, 784 F. Supp. 94, 107 (S.D.N.Y. 1992) (Applying the res judicata standard from *Chavez*: "It was error for ALJ Anyel to disregard the finding of ALJ Ashley that Almonte was limited to light work in the absence of new evidence at the second hearing that would support such a departure. Instead, ALJ Anyel should have considered the change in Almonte's age status as a changed circumstance warranting a departure from ALJ Ashley's ultimate finding of no disability. *See Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir.1988)."). The approach taken in *Chavez*, involving this rebuttable presumption of continuing non-disability based on the earlier denial of benefits, seems to make particular sense where, as here, the alleged new period of disability is limited to a relatively brief period immediately following the earlier period in which the claimant was found not disabled.

In this action, the ALJ who denied Plaintiff's second claim seems to have given

12

res judicata/collateral estoppel effect to certain findings by the prior ALJ, and to have applied a rebuttable presumption to such findings, similar to the procedure outlined in *Chavez,* discussed above. For example, at Step 3 of the sequential analysis, the ALJ stated, with regard to Plaintiff's physical impairments: "The prior ALJ determined that the claimant's impairments did not meet or medically equal a listing through April 4, 2012, and the minimal new evidence of record does not support a different finding during the period from April 5, 2012 through December 31, 2012."[21]

Likewise, the ALJ indicated that Plaintiff's RFC had already been determined by the prior ALJ as of April 4, 2012, and that Plaintiff had not rebutted the accuracy of that finding with new evidence concerning the period at issue in this action:

> Because I do not find sufficient grounds to reopen the claimant's prior application for the reasons discussed at length above, the prior [ALJ's] determination that the claimant had the above noted residual functional capacity represents the final ruling of the Social Security Administration as to the claimant's residual functional capacity through April 4, 2012.
>
> During the brief period at issue before me from April 5, 2012 through the date last insured on December 31, 2012, the medical evidence of record does not establish a greater degree of limitation than found by the prior [ALJ].[22]

Further, at Step 4 of the sequential analysis, the ALJ found, based on the testimony of the VE at the earlier hearing, that Plaintiff could not perform her past relevant work: "I accept the expert's opinion. I note that because the claimant's [RFC] has not changed since the prior [ALJ's] decision, it is not necessary to consult another vocational expert

---

[21] Transcript at 19. At the same time, however, the ALJ noted that the law had recently changed with regard to listings concerning *mental* impairments, and he conducted a de novo evaluation of Plaintiff's mental impairments under the revised standard. Transcript at 19.
[22] Transcript at 20.

13

in this case."[23]   And finally, at Step 5, the ALJ also adopted the prior ALJ's finding, that Plaintiff could perform the jobs of Bench Assembler and Electronic Accessories Assembler.[24]

Plaintiff in this action has not directly alluded to any of the principles just discussed, nor has she alleged that the ALJ erred by applying a rebuttable presumption of continuing non-disability. For that reason, presumably, the Commissioner also does not discuss the aforementioned principles in her responsive papers.   To the contrary, the Commissioner maintains that the ALJ conducted an entirely "*de novo* review of Plaintiff's application," though the Court does not agree.   Rather, it appears that the ALJ *essentially* applied a *Chavez v. Bowen-type* rebuttable presumption of continuing non-disability, and considered only whether the new evidence was sufficient to require findings different than what the previous ALJ had made.

However, although Plaintiff does not expressly contend that the ALJ erred in that regard, her arguments regarding the sufficiency of the ALJ's findings *imply* that the ALJ should have made entirely new and detailed findings of his own at each step of the sequential analysis, without regard to the prior ALJ's determination.   For example, with regard to the RFC determination, Plaintiff argues that the ALJ did not have substantial evidence with which to make such a finding, since he essentially rejected Dr. Snyder's opinion:

> Dr. Snyder's opinion was the only one to address every impairment Plaintiff had, but the ALJ rejected it.   The ALJ still *somehow* assessed Plaintiff with the

---

[23] Transcript at 22.
[24] Transcript at 22-23.

14

capacity to perform light exertional work.[25]

In conjunction with this, Plaintiff maintains that the ALJ erred by failing to develop the record, since his rejection of Snyder's opinion left an "obvious gap" in the record, and left his RFC determination unsupported by substantial evidence. In making this argument, Plaintiff ignores the Commissioner's prior determination concerning her RFC, and proceeds as if the retrospective opinions of Doctor Snyder and PA Wagner, both rendered in 2017, were the only things from which the ALJ could have made his RFC determination.

However, the Court disagrees with both arguments. Preliminarily, to the extent that Plaintiff maintains the ALJ did not provide good reasons for rejecting Snyder's opinion, the Court disagrees. Further, having properly rejected Snyder's opinion, the Court does not believe that the ALJ erred by pointing out that the Commissioner had already determined Plaintiff's RFC as of April 4, 2012, and that Plaintiff had not come forward with evidence to support a more-restrictive RFC after that date.

Nor does the Court agree that the ALJ erred by failing to develop the record. Plaintiff's contention that the ALJ's rejection of Snyder's opinion left a gap in record with regard to competent medical opinion is incorrect: There was no such gap, because the Commissioner's prior decision had already established Plaintiff's RFC. The only issue for the ALJ was whether Plaintiff had shown that her RFC had changed during the nine-month period immediately following that prior determination, and the ALJ found that she

---

[25] Pl. Memo of Law [#11-1] at p. 11.

had not. That determination is supported by substantial evidence.

For these same reasons, Plaintiff's related argument that the ALJ improperly relied on his own "lay opinion" when making his RFC finding also lacks merit. Again, Plaintiff's argument on this point rests on the premise that Dr. Snyder's opinion was the only medical opinion to address all of her impairments, and that by rejecting that opinion the ALJ left a gap in the record that he could only have filled by relying on his own medical judgment.[26] However, the ALJ did not rely on his own opinion, but rather, he relied on the Commissioner's prior final determination as presumptively establishing Plaintiff's RFC, subject to being rebutted by evidence that Plaintiff's condition had gotten worse during the nine-month period immediately following that determination. The ALJ found that there was no such evidence, and that finding is supported by substantial evidence.

Plaintiff also contends that the ALJ's determination at Step 3 was erroneous. Specifically, Plaintiff contends that the ALJ's finding -- that her impairments did not meet or equal a listed impairment -- is not supported by substantial evidence, since he did not expressly "state what Listings [he] considered and why [he] rejected those Listings."[27] Once again, in making this argument, Plaintiff views the ALJ's discussion in a vacuum, without regard to the Commissioner's prior final decision. However, as already mentioned, the ALJ clearly explained the basis for his Step 3 finding, as follows: "The

---

[26] Pl. Memo of Law [#11-1] t p. 15 ("The ALJ had only one physical medical opinion which addressed all of Plaintiff's impairments to guide his determination. He chose to give this opinion 'very little weight,' but still somehow assessed Plaintiff with the capacity to perform a range of light work. By doing so, the ALJ elevated his opinion over that of a medical expert.").
[27] Pl. Memo of Law [#11-1] at p. 19.

prior ALJ determined that Plaintiff's impairments did not meet or medically equal a listing through April 4, 2012, and the minimal new evidence of record does not support a different finding during the period from April 5, 2012 through December 31, 2012."[28] Plaintiff maintains that the ALJ's finding was technically deficient, because it did "not state what listings the ALJ considered and why the ALJ rejected [those] listings."[29] Tellingly, however, Plaintiff did not assert in her initial motion that her conditions actually met or equaled a listing. Similarly, in her reply brief Plaintiff asserts that the ALJ "should have considered" Listing 4.04(c), but does not explain how the evidence of record establishes that her conditions actually met or equaled that listing. [30]

In any event, the Court finds that Plaintiff's argument on this point lacks merit. The ALJ indicated that he considered the new evidence that Plaintiff submitted, relating to the period April 5, 2012 through December 31, 2012, but that it did "not support a different finding" than that made in the earlier decision, and that the prior Step 3 determination was therefore "not contradicted by new evidence prior to the date last insured." The Court finds that the ALJ's determination at Step 3 is supported by

---

[28] Transcript at 19.
[29] Pl. Memo of Law [#11-1] at p. 19.
[30] Plaintiff merely asserts that Dr. Snyder diagnosed her with "ischemic heart disease," and suggests that she therefore meets Listing 4.04(C), but does not attempt to show how her condition satisfied the specific requirements of that listing during the relevant period. "To meet Listing 4.04(C), a claimant must show (1) ischemic heart disease "with symptoms due to myocardial ischemia, as described in [4.00(E)(3)–(7) ], while on a regimen of prescribed treatment"; (2) coronary artery disease demonstrated by appropriate medically acceptable angiographic evidence showing a certain percentage of coronary arterial or bypass vessel narrowing; (3) a finding by a medical consultant "that performance of exercise tolerance testing would present a significant risk to the [claimant]"; and (4) the coronary artery disease causes "very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living." 20 C.F.R. pt. 404, subpt. P, app. 1 § 4.04(C)(1)–(2)." *Terrence K. v. Comm'r of Soc. Sec.*, No. 4:17-CV-00060, 2018 WL 6928904, at *5 (W.D. Va. Nov. 13, 2018), report and recommendation adopted sub nom. *Kirby v. Comm'r of Soc. Sec.*, No. 4:17-CV-00060, 2019 WL 97039 (W.D. Va. Jan. 3, 2019).

17

substantial evidence, inasmuch as Plaintiff did not show that her conditions, either singly or in combination, met or equaled a listed impairment during the relevant period.

Lastly, Plaintiff contends that remand is required since the ALJ failed to "explain the weight given to PA Wagner's opinion," and since "the ALJ's RFC finding does not reflect PA Wagner's opinion."[31] Plaintiff admits, however, that an ALJ's failure to assign weight to a particular opinion may be harmless where the ALJ's decision "reflects that the opinion was considered."[32] Here, the ALJ clearly considered and discussed Wagner's opinion. Further, although the ALJ did not expressly state that he was assigning a particular amount of weight to Wagner's opinion, he explained that he was not adopting Wagner's opinion entirely, because it was less restrictive than the ALJ's RFC finding. Specifically, the ALJ noted that his RFC finding adopted the prior ALJ's finding that Plaintiff could not "push/pull with the upper extremities," while Wagner's opinion indicated that Plaintiff "could frequently to constantly perform fine and gross manipulative tasks with both upper extremities," without placing any limitation on her ability to push or pull. Accordingly, the Court finds that it is evident from the ALJ's decision that he gave less-than-controlling weight to Wagner's opinion, and that such determination benefitted Plaintiff. Accordingly, Plaintiff's contention, that remand is required simply because the ALJ failed to assign a particular weight to Wagner's opinion, lacks merit.

---

[31] Pl. Memo of Law [#11-1] at p. 18. Plaintiff states that, "[t]he ALJ's decision does not state what Listings the ALJ considered and why the ALJ rejected these Listings. This prevents Plaintiff from having any Listing analysis to turn to, which is harmful error, warranting remand." Pl. Memo of Law [#11-1] at p. 19.

[32] Pl. Memo of Law [#11-1] at p. 18.

CONCLUSION

For the reasons discussed above, Plaintiff's motion for judgment on the pleadings [#11] is denied, Defendant's motion [#18] is granted, and this matter is dismissed. The Clerk of the Court is directed to enter judgment for Defendant and close this action.

So Ordered.

Dated: Rochester, New York
September 30, 2019

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge